529 So.2d 1167 (1988)
C.E. MIDDLEBROOKS d/b/a Wekiva Falls Resort, Appellant,
v.
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Appellee.
No. 87-1646.
District Court of Appeal of Florida, Fifth District.
July 7, 1988.
Rehearing Denied August 19, 1988.
*1168 Martin S. Friedman of Rose, Sundstrom & Bentley, Tallahassee, for appellant.
Wayne E. Flowers, Palatka, for appellee.
SHARP, Chief Judge.
C.E. Middlebrooks appeals from an order of the St. Johns River Management District (District) which approved Middlebrooks' application for a consumptive use permit (C.U.P.) pursuant to section 373.219(1), Florida Statutes (1985),[1] but which conditioned the permit on his filing an application for a recreational use permit and reduction of the flow of water from two wells involved in this case during low use periods. Middlebrooks argues the District lacked jurisdiction to enter its final order because he withdrew his permit application after receiving the hearing officer's recommended order but before the District acted on it. He also argues there was insufficient competent evidence to support the hearing officer's finding that the standpipes involved in this proceeding are wells subject to regulation and that because the wells were built prior to the establishment of the Wekiva River Aquatic Preserve, and thus ultimately drain into it, the District cannot alter their status quo. We affirm.
Middlebrooks is the owner and developer of Wekiva Falls Resort, a recreational facility near the Wekiva River in Lake County, Florida. He purchased the land in 1968 and later found a stream crossing his property and emptying into the Wekiva River. In a low area in the course of the stream, he observed that more water was flowing out than coming in. He installed two standpipes to capture and control the flow of water from underground. The water from the pipes now flows into an area Middlebrooks developed for swimming. Any reduction of the flow, Middlebrooks contends, will jeopardize his ability to use the area for swimming.
*1169 In order to accommodate his recreational development, Middlebrooks applied to the District for a C.U.P. in order to withdraw from the standpipes 31.7 million gallons per day (only a portion of the total amount of water flowing from the pipes) for commercial and industrial use. The District Technical Staff Report recommended the permit be granted, provided the permit include a limitation on the amount of water consumed by Middlebrooks. Middlebrooks requested an administrative hearing pursuant to section 120.57(1), Florida Statutes. (Formal hearing). After a full hearing, the hearing officer found that the standpipes are wells and that they were constructed for the purpose of "locating, acquiring or developing ground water." The import of the hearing officer's finding is that Middlebrooks can be required to reduce the rate of flow of water from the pipes as a special condition of the C.U.P.
Middlebrooks filed exceptions to the recommended order, but on May 12, 1987  the day he was to present oral argument to the District  he filed a notice of withdrawal of his C.U.P. application. The District ignored his withdrawal and rendered a final order adopting the hearing officer's recommended order. This is the order being appealed in this case. However, Middlebrooks did file an appeal with the Florida Land and Water Adjudicatory Commission pursuant to section 373.114, Florida Statutes, which postponed the effectiveness of the District's order and postponed the appeal time to this court. See Griffin v. St. Johns River Water Management District, 409 So.2d 208 (Fla. 5th DCA 1982). The Commission's proposed final order recommended affirmance of the District's order. However before the Commission's order was rendered, Middlebrooks filed a notice of voluntary dismissal and the Commission dismissed his appeal.
Prior to the Commission's dismissal, Middlebrooks filed his notice of appeal regarding the District's order to this court. The appeal to this court was premature. See Griffin, supra; Brooks v. School Board of Brevard County, 382 So.2d 422 (Fla. 5th DCA 1980). However, we elect to treat it as prematurely filed but subsequently matured. See Norm Burg Construction Corp. v. Jupiter Inlet Corp., 514 So.2d 1102 (Fla. 1987); Williams v. State, 324 So.2d 74 (Fla. 1975).
Middlebrooks argues that the withdrawal of his C.U.P. application immediately prior to oral argument before the District deprived the District of jurisdiction to enter a final order. We think this issue is controlled by Florida Rule of Civil Procedure 1.420(a)(1). It provides in pertinent part:
[A]n action may be dismissed by plaintiff without order of court (i) before trial by serving, or during trial by stating on the record, a notice of dismissal at any time before a hearing on motion for summary judgment, or if none is served or if the motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court for decision ...
Florida Administrative Code Rule 40C-1.081(7), makes the Florida Rules of Civil Procedure applicable to administrative proceedings to the extent they are not inconsistent with Chapter 120, Florida Statutes, or the administrative rules. No inconsistency exists, to our knowledge.
In our view the hearing officer in an administrative proceeding is analogous to a jury. He is the fact-finder. The District Board is like a trial judge in a jury case. The Board makes conclusions of law, but cannot reject nor modify the hearing officer's findings of fact unless they are not supported by competent evidence. See § 120.57(1)(b)9, Fla. Stat. (1987). After the fact-finder retires to deliberate the outcome, it is too late under Rule 1.420(a) to take a voluntary dismissal. Here the hearing officer had concluded his fact-finding process, and filed his tentative "verdict." He had "retired." The oral argument before the District was set and entry of the final order by the District remained, but that process is analogous to post-verdict arguments and entry of final judgment by a court after post-judgment motions and argument.
*1170 In Humana of Florida, Inc. v. Department of Health and Rehabilitative Services, 500 So.2d 186 (Fla. 1st DCA 1986), rev. den'd, 506 So.2d 1041 (Fla. 1987), the petitioner for a certificate of need withdrew its petition prior to the hearing. The hearing officer cancelled the hearing and closed the file. The court held that Humana's withdrawal divested the agency of jurisdiction to proceed. Humana's withdrawal came before the fact issues were presented to the fact finder, analogous to filing a voluntary dismissal before the retirement of the jury.
In this case, Middlebrooks allowed the hearing to proceed to conclusion. The fact-finder not only "retired", but he rendered a proposed "verdict." Middlebrooks knew when he sought to withdraw what the outcome in the case was most likely going to be. To allow him to dismiss at that point would afford him the advantage of 20/20 hindsight. No other party dismissing pursuant to Rule 1.420(a)(1) is allowed such an advantage.
Turning to the merits of the District's order, we think there was sufficient evidence adduced to support the conclusion that the standpipes are "wells" and thus subject to regulation by the District. Section 373.303(7) defines "well" as:
[A]ny excavation that is drilled, cored, bored, washed, driven, dug, jetted, or otherwise constructed when the intended use of such excavation is for the location, acquisition, development, or artificial recharge of groundwater ...
The evidence showed that Middlebrooks actually drilled through rock and other layers of earth, which would not have been necessary simply to drill upon an existing spring vent. Further, Middlebrooks' own expert testified that he could not conclude from these facts that the pipes had not increased the flow of water onto Middlebrooks' property.
We also reject Middlebrooks' final argument that the status quo of water flow from the pipes cannot be altered because the pipes are outside of, and predate the designation of, the Wekiva area as an aquatic preserve. If the District is limited to regulating waters arising inside the preserve, it would be virtually powerless to achieve its mandated purpose to "effect the maximum utilization of the waters in the District by managing, regulating and controlling the use of such waters."[2] Rule 40C-1.021 provides, "The District shall regulate and control all grounds and surface water, including the use of such water and the construction alteration, maintenance, and operation of all water wells, ... within the geographical boundaries of the District... ." (emphasis supplied). The District's authority to regulate wells [see §§ 373.206-207; § 373.209] is not limited by time nor boundaries of the Wekiva preserve.
AFFIRMED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] Section 373.219(1), Florida Statutes (1985) provides:

373.219 Permits required. 
(1) The governing board or the department may require such permits for consumptive use of water and may impose such reasonable conditions as are necessary to assure that such use is consistent with the overall objectives of the district or department and is not harmful to the water resources of the area. However, no permit shall be required for domestic consumption of water by individual users.
[2] Rule 40C-1.011, Florida Administrative Code.